#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **SAMUEL YATES,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) |
| | )   **Case No.   09-cv-260-JPG-PMF** |
| **C/O BRADLEY, et al,** | ) |
| | ) |
| **Defendants.** | ) |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is defendants' motion to dismiss (Doc. No. 28).  Plaintiff Samuel Yates filed this § 1983 action, seeking damages for a violation of his Eighth Amendment right to be free from cruel and unusual punishment.  Specifically, he alleges that Tyler Bradley and James Dilday responded with deliberate indifference to his serious need for additional medical treatment on May 18, 2008 (Doc. No. 5).  The motion is opposed (Doc. No. 30).  This Report will focus on the defense argument that Yates's § 1983 claim for damages is barred by the doctrine of qualified immunity.[1]

### I.   Standard for Dismissal

The argument for dismissal is evaluated under Rule 12(b)(6).  The well-pleaded allegations of the Amended Complaint are taken as true, and all inferences favorable to Yates are drawn.[2]  The

---

[1] Because qualified immunity includes an entitlement to avoid the burdens of litigation, a determination on this affirmative defense should be made early in the litigation.  *Saucier v. Katz*, 533 U.S. 194, 200 (2001).

[2] The merits of a qualified immunity defense are not generally resolved on a Rule 12 motion to dismiss.  *See Jacobs v. City of Chicago*, 215 F.3d 758, 765 n. 3 (7th Cir. 2000).  Here, the Amended Complaint sets forth all material facts, permitting a fair assessment of the defense at this juncture.

question is whether the Amended Complaint states a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007). A claim has facial plausibility when the factual content permits a reasonable inference that the defendants are liable for the alleged conduct. *Bissessur v. Indiana Univ. Bd of Trs.*, 581 F3d 599, 602-03 (7th Cir. 2009). In these particular circumstances, the allegations must establish that Yates was exposed to conditions presenting a substantial risk of harm and that the defendants acted with deliberate indifference to Yates's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

## II.     Background

In May, 208, Yates was confined with the Illinois Department of Corrections (IDOC) at Menard Correctional Center. Defendants Bradley and Dilday were non-medical corrections employees. The IDOC was subject to a state law requiring inmates with available funds to make a $2 payment for each non-emergency medical visit. 730 ILCS 5/3-6-2(f). Regulations implementing this statute provide that emergency treatment shall be available to offenders 24 hours a day. 20 Ill. Admin. Code 415.30(c). Follow-up visits are viewed as emergencies when "determined necessary by a Department physician." 20 Ill. Admin. Code 415.30(g).

On May 15, 2008, Yates asked defendant Bradley for medical care for a painful area on his back. He showed the area of concern to Bradley, who assisted Yates by escorting him to a doctor approximately one hour after Yates made his request. The doctor evaluated Yates's skin ailment and informed Yates that he appeared to be suffering from a spider bite. Antibiotic and pain relief medications were prescribed.

Over the next three days, Yates experienced increasing levels of pain. On May 18, 2008, he

asked defendant Bradley and defendant Dilday to provide him with additional medical attention. Both Bradley and Dilday knew that Yates was being treated by a doctor for his skin ailment. They instructed Yates to prepare a sick call request to medical staff. Yates believed that he would be charged a $2 co-payment if he followed those instructions. He attempted, without success, to persuade Bradley and Dilday that his condition qualified as a medical emergency and was therefore exempt from the co-payment requirement. Defendant Dilday informed Yates that, "You've got to do your part, if you want treated."

Yates did not prepare a sick call request. Instead, he returned to his cell and waited approximately three hours for a shift change. During this time, Yates spoke with his cell-mate, who formed the impression that Yates was experiencing pain. Yates was sweating profusely, his skin was turning blue, and he was developing large welts all over his head.

After the shift change, Yates asked a different correctional officer for medical attention. This officer conferred with two other correctional officers and made arrangements for Yates to be transported to the prison infirmary. When Yates arrived at the infirmary, he was examined by a doctor who was assisted by a medical technician. When the medical technician inquired about the medical cause for Yates' symptoms (sweating and welts), the doctor explained that Yates was in shock from an infection. The doctor chastised Yates, suggesting that he waited too long to seek medical attention for the infection. The doctor made an incision in an effort to promote drainage and wrapped the affected area with gauze.

Yates' condition continued to deteriorate. At approximately 4:00 a.m. on May 19, 2008, a medical technician arranged for Yates to be transported to Chester Memorial Hospital for further

evaluation and treatment. When Yates arrived at the hospital, Dr. Platt reviewed Yates's symptoms, took a culture, ordered testing, and administered a sedative. Based on the test results, Yates was diagnosed with methicillin-resistant staph aureus (MRSA). After further consultation, a surgical operation was performed.

On May 30, 2008, Yates was discharged with a diagnosis of cellulitis secondary to the MRSA infection. The medical treatment left Yates with three very large scars on the left side of his lower back.

### III.   Qualified Immunity

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Anderson v. Creighton*, 483 U.S. 635 (1987). The inquiry is whether a reasonable prison employee would understand that Bradley and/or Dilday violated Yates' constitutional rights when they responded to a second request for medical attention by directing Yates to submit a sick call request to medical staff. In order to resolve this issue, the Court considers (1) whether the conduct violated a constitutional right and (2) whether the constitutional right was clearly established in May, 2008. *Saucier v. Katz*, 533 U.S. at 201.

On the first point, Yates had an Eighth Amendment right to be free from cruel and unusual punishment. The defendants violated that right if they responded to a serious medical need with deliberate indifference. The Eighth Amendment standard has an objective component (a medical problem requiring a doctor's attention) and a subjective component (failure to take reasonable steps

to abate a known risk of harm). *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

The defendants focus on the second prong – the subjective component – of the Eighth Amendment claim, noting that the statute and regulations do not provide clear guidelines to help prison employees decide when inmates are exempt from the $2 co-payment requirement. Yates suggests that the defendants disregarded the serious risks associated with his life-threatening MRSA infection, precluding reliance on medical judgment.

The qualified immunity defense has merit as to the subjective element of the Eighth Amendment claim. The factual allegations show that Bradley and Dilday knew that Yates had a skin ailment which had been evaluated by a medical doctor within a few days. They also knew Yates was receiving ongoing treatment in the form of prescribed medication. They did not know Yates had developed MRSA and were not cognizant that he was in shock from the infection. Also, they did not know that Yates had been mistreated when he first visited the doctor. Hence, they did not have facts demonstrating that an immediate follow-up appointment was medically ordered or necessary. In these particular circumstances, Bradley and Dilday acted reasonably by instructing Yates to submit his request for follow-up care to medical staff. *See Greeno v. Daley*, 414 F.3d 645, (7th Cir. 2005)(investigation and referral to medical provider does not qualify as deliberate indifference). This reasonable response precludes liability under § 1983, even if harm was not averted. *Farmer v. Brennan*, 511 U.S. 825, 845 (1994).

The same result would be reached if the inference were made that the defendants negligently failed to recognize that Yates was exempt from the co-payment requirement. States are entitled to

charge for medical treatment when inmates are able to pay, *Martin v. Debruyn*, 880 F. Supp 610, 615 (N.D. Ind. 1995), *aff'd*. 116 F.3d 1482 (7th Cir. 1997), and simple negligence in deciding the best method to process a request for medical care does not satisfy the deliberate indifference standard. *Johnson v. Doughty*, 433 F.3d 1001, 1012 (7th Cir. 2006)(negligent handling of a prisoner complaint regarding ongoing medical treatment does not qualify as deliberate indifference).

Moreover, even if it is assumed that Yates has an Eighth Amendment right to be provided with an immediate follow-up appointment while under a doctor's care, that right was not clearly established in May, 2008. The Court's own research has not turned up a similar case finding an Eighth Amendment violation. With one exception, the cases mentioned in plaintiff's brief resulted in the finding that there was no Constitutional deprivation. The deprivation recognized in *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) is based on dissimilar facts. In *Sealock*, there was a delay in providing prompt *initial* care for symptoms of a major heart attack by a defendant who sought to avoid extra paperwork by instructing the inmate not to die on his shift. The facts evaluated in *Sealock* are not remotely similar to the allegations presented here.

### III.   Preclusive Effect of Threshold Review

Plaintiff suggests that the qualified immunity defense was considered and rejected when his case was screened pursuant to 28 U.S.C. § 1915A. On November 30, 2009, Chief Judge Herndon reviewed the allegations of the Amended Complaint, dismissed the Illinois Department of Corrections on the basis of Eleventh Amendment immunity, and allowed the Eighth Amendment claim to proceed against Dilday and Bradley (Doc. No. 13). On careful review of that order, the Court is not persuaded that Chief Judge Herndon considered the merits of a qualified immunity

defense and resolved the defense in plaintiff's favor.

### IV.   Conclusion

IT IS RECOMMENDED that defendants' motion to dismiss (Doc. No. 28) be GRANTED. Because defendants Dilday and Bradley enjoy qualified immunity from liability on Samuel Yates' § 1983 claim for damages, the Eighth Amendment claim should be DISMISSED with prejudice.

**SUBMITTED:   January 11, 2011  .**

                                        **S/Philip M. Frazier**
                                        **PHILIP M. FRAZIER**
                                        **UNITED STATES MAGISTRATE JUDGE**